NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
NORBERTO MATOS,              :
a/k/a                       :
SANTIAGO GARCIA,            :
                            :   Civil Action No. 06-0452 (PGS)
             Petitioner,    :
                            :
          v.                :   OPINION
                            :
DR. R. PARRISH, et al.,     :
                            :
             Respondents.   :
```

**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Norberto Matos                   Michael J. Williams
Riverfront State Prison          Deputy Attorney General
Camden, NJ 08101                 P.O. Box 086
                                 Trenton, NJ 08625-0086

**SHERIDAN**, District Judge

Petitioner Norberto Matos, a prisoner currently confined at Riverfront State Prison in Camden, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Dr. R. Parrish and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> On December 9, 1995, at 7:00 a.m., the defendant
> and victim engaged in a fight in a restaurant involving
> the exchange of punches and ending up with the victim
> threatening to kill defendant.  They were separated,
> the victim left, and shortly thereafter the defendant
> left in a calm mood, indicating that he had not been
> hurt.  A few minutes later, the defendant telephoned
> his nephew asking if he had a gun or knew someone who
> had one.  The nephew said no.  About a half hour later,
> the victim returned to the restaurant, sat at the
> counter, and ordered breakfast.  After the meal was
> served, the defendant entered, opened a knife, and ran
> toward the victim, whom he stabbed in the back.  As the
> victim pleaded for his life, defendant repeatedly
> stabbed him, ultimately causing his death.  The police
> arrived and placed defendant under arrest.  Defendant
> told the police that he had returned with the knife to
> fight with the victim because he thought the victim
> might have a gun.

(Opinion of Superior Court, Appellate Division, March 22, 2001,

RA5 at 2-3.)

B.   Procedural History

Following a jury trial in the Superior Court of New Jersey,
Law Division, Hudson County, Petitioner was convicted of the
lesser included offense of aggravated manslaughter, N.J.S.A.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

2

2C:11-4c, and related weapons offenses, and was sentenced on February 22, 1999, to a term of imprisonment for thirty years, fifteen years to be served without parole.

The Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence by Opinion dated March 22, 2001.  (Ra5.)  On June 6, 2001, the Supreme Court of New Jersey denied certification.  (Ra9.)

On October 9, 2001, Petitioner filed a Petition for Post-Conviction Relief in the Superior Court of New Jersey, Law Division, Hudson County.  (Ra10.)  Following a non-evidentiary hearing, the PCR court denied relief on February 9, 2004.  (Ra11; Ra32.)  The Appellate Division affirmed the denial of relief on April 18, 2005.  (Ra14.)  The Supreme Court of New Jersey denied certification on July 11, 2005.  (Ra16.)  This Petition followed.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context

4

where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.

Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Although a petition for writ of habeas corpus may not be
granted if the Petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits
notwithstanding the petitioner's failure to exhaust his state
court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v.
Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.
Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers. Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972). A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).]

### III.   ANALYSIS

#### A.   Evidentiary Issues

Petitioner contends that the trial court "erred" by refusing
to permit the introduction of evidence that the victim had a
reputation for carrying a gun, by refusing to permit the
introduction of evidence that the victim had a prior conviction

6

for murder and a reputation for violence, and by permitting the introduction of evidence of the victim's good character. Petitioner contends that the excluded evidence would have supported his claim of self-defense.

Under New Jersey law, subject to certain provisions not relevant here, "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4a. The use of deadly force is not justifiable if the actor, "with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter." N.J.S.A. 2:3-4b(2)(a).

At trial, the court permitted evidence of the victim's reputation for violence, but disallowed evidence of his reputation for carrying a gun, particularly without any evidence that Petitioner was aware of that reputation. (Ra25 at 4.) The trial court also permitted a police officer to testify that Petitioner had stated that he armed himself with a knife because he thought Petitioner had a gun. (Ra26 at 65-66.) After hearing testimony regarding the victim's reputation for carrying a gun, however, the trial court refused to permit this evidence to be presented to the jury because it and other evidence failed to justify a claim of self-defense under New Jersey law;

7

specifically, because the uncontroverted evidence was that

Petitioner had left the vicinity after the original altercation,

and returned armed at least half an hour later, at which time he

initiated further contact, the evidence failed to support the

required "immediacy" with respect to the first altercation and

the evidence indicated that Petitioner provoked the use of force

against him in the second encounter.  (Ra26 at 85-144; Ra27 at

42-47, 66-85; Ra28 at 3-10.)

> What we have then, even if we were to credit the
> hearsay testimony that came in through Officer
> Hernandez, there is no information in this case, no
> evidence whatsoever, that the threat was immediate.
> Indeed, the testimony is that the decedent left La
> Cabana, the defendant remained for a short time, was
> calm, told Mr. De La Cruz he was all right, because Mr.
> De La Cruz was very concerned about him, he left and
> returned with a knife.

> And then we have to consider the third piece of
> evidence that counsel asked me to consider, which is
> the testimony of Mr. De La Cruz testifying about the
> choke hold and where Mr. Norberto was trying to defend
> himself, swinging around.

> But it's well settled, and I don't think I even
> need to cite cases for the principle that you can't use
> self-defense as a defense when you are the initial
> aggressor.  And certainly Mr. De La Cruz' testimony,
> taking not one sentence in isolation, would support the
> State's contention and every other witness' testimony
> that in the instant that led to the death of Freddie
> Linago, Mr. Matos was the instigator, or provoked it.
> Was that because of what had happened earlier in the
> bar?  That I will charge passion/provocation.  That's
> why I will include that in my charge.

> As for returning anywhere from a half hour to an
> hour later, attacking clearly from behind, I can't say
> while someone tries to defend himself and puts the
> initial aggressor in a choke hold, that now the initial

8

aggressor is entitled to renew the attack in a way to
lead towards death. I find no evidence to charge self-
defense. There's too much of a time lag. There's
never any brandishment of a weapon. There's evidence
that earlier fists were used to strike Mr. Matos.
Certainly that's there. Whether that's enough to
support a jury finding of passion/provocation I will
leave to the jury.

(Ra28 at 8-10.)

On direct appeal, the Appellate Division rejected the claim

that the trial court erred in excluding this evidence in relation

to Petitioner's claim that he was guilty of, at most,

passion/provocation manslaughter. Petitioner did not raise the

self-defense issue on direct appeal. Nevertheless, the Appellate

Division considered the issue and found, even if there was error,

that it was harmless.

> Defendant was permitted to introduce evidence that
> the victim had a reputation for violence but he was
> prohibited from proving that the victim had a
> reputation for carrying a gun. There was no evidence
> and no proffer of evidence that the defendant was aware
> of defendant's alleged reputation for carrying a gun.
> Nonetheless, he argues under Point I that the judge
> erred in fail[ing] to admit the gun evidence in
> relation to his claim that at most he was guilty of
> passion/provocation manslaughter.
>
> Although the trial judge charged on
> passion/provocation manslaughter pursuant to
> defendant's request, she recognized that it was
> probably not implicated in this case. Since the
> initial encounter was brief and not particularly
> severe, and since the victim left calm and returned
> about a half hour later armed with a knife for the
> purpose of retaliation, and since he immediately
> attacked and stabbed the seated and unarmed victim from
> the rear, we are satisfied that the evidence was
> insufficient to support the charge of
> passion/provocation manslaughter. See, e.g., State v.

9

Choice, 98 N.J. 295, 299 (1985); State v. Copling, 326
N.J. Super. 417, 428-30 (App. Div. 1999), certif.
denied, 164 N.J. 189 (2000).  Moreover, in this
context, the evidence could only have been relevant on
a claim of self-defense, see, e.g., State v. Gartland,
149 N.J. 456, 473 (1997), and defendant does not
contend that the trial judge erred in refusing to
charge self-defense.  Therefore, the refusal to admit
the evidence was not error.  Even if it was error, in
the context of this unprovoked attack, where the judge
allowed in evidence that the victim had a reputation
for violence, the ruling was not clearly capable of
producing an unjust result.  R. 2:10-2

(Opinion of Appellate Division, Ra5 at 3-4.)

In his petition for post-conviction relief, Petitioner

argued that his trial and appellate counsel had provided

ineffective assistance, by failing to argue sufficiently in

support of Petitioner's claim of self-defense.  The PCR court

rejected this claim.

Now the points that were brought up, I believe, by
the petitioner in this case was that the defense
counsel failed to adequately argue that the jury be
instructed on self defense.  I just don't see that this
is an argument for a PCR based on this particular case.

Mr. [Sonntag] did in fact argue, there was -- the
record I think is complete in determining number one
that there was an argument, number two that Judge Kenny
did consider that argument and that her reasoning was
sound because even though this may not have been
brought up by appellate counsel, one thing that the
appellate court should do, whether they're brought up
or they don't -- it's not brought up, is that they will
always consider anything to do with an affirmative
defense, anything to do with a failure to charge
underlying lesser included defenses and just as part
and parcel of the appeal process and they will very
often say even though not -- not brought up below, or
even though this -- I mean they don't miss those if
they're there so it is clear to me that not only was it
argued but clearly there is a -- you know a sound

10

> reason given by Judge Kenny on the record, which I
> think was unassailable, the defendant under the
> circumstances, I mean you know you don't get a bite at
> an affirmative defense of self defense when you are
> number one, the aggressor and number two, you are the
> only one that has the weapon capable of causing death.
> So I don't think that that argument has any merit.

(Ra32 at 10-11.)   The Appellate Division affirmed the denial of

post-conviction relief, noting that there was no evidence to

support a self-defense charge.   (Ra14 at 4.)

Respondents contend that this claim fails to raise a

constitutional issue, is not exhausted,[2] and is, in any event,

meritless.

In the Petition filed in this Court, Petitioner claims

merely "error" in the failure to admit the contested evidence.

Review of the briefs filed in state court, however, reveals that

he did claim that the evidentiary rulings were error of federal

constitutional magnitude, as they related to his defense of

imperfect self-defense and passion/provocation manslaughter.

(Ra1 at 17.)   In his state PCR proceeding, Petitioner also

litigated the self-defense issue, albeit in the context of a

claim of ineffective assistance of counsel.   In rejecting the

claim of ineffective assistance of counsel, the state courts

clearly held that the evidence proffered, including the evidence

---

[2] Pursuant to 28 U.S.C. § 2254(b), a petition for writ of habeas corpus shall not be granted unless the Petitioner has exhausted the remedies available in state court, but may be denied on the merits notwithstanding the failure to exhaust state remedies.

at issue here, was not sufficient to require a self-defense charge. It thus appears that, whether raised as a separate claim or not, the state courts have litigated and decided the question whether Petitioner was entitled to a defense of self-defense.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Petitioner cannot meet that standard here. The state courts have found that there was no error of state law in refusing to admit the evidence or to charge self-defense. To the extent the Petition can be construed as asserting a due process claim, this Court cannot discern any

12

deprivation of due process in the exclusion of the evidence or
the refusal to charge self-defense.  Petitioner is not entitled
to relief on this claim.

B.    Sentencing Issues

At sentencing, the trial court weighed statutory aggravating
and mitigating factors and sentenced Petitioner to the maximum
sentence of thirty years' imprisonment with, pursuant to N.J.S.A.
2C:43-6(b), a fifteen-year parole disqualifier.  (Ra1 at Ex. 4a-
51; Ra 31 at 52-59.)

Petitioner contends that this sentence violates the rule of
Blakely v. Washington, 542 U.S. 296 (2004), because his sentence
was based upon facts not found by a jury.  Respondents assert
that this claim is not exhausted and that it is meritless.

Petitioner admits that he has not exhausted this claim in
state court.  As the claim plainly does not entitle Petitioner to
federal habeas relief, this Court will exercise its discretion to
deny the claim, notwithstanding Petitioner's failure to exhaust
the claim in state court.  See 28 U.S.C. § 2254(b)(2).

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000),
applying the Sixth Amendment right to trial by jury, the Supreme
Court held that "[o]ther than the fact of a prior conviction, any
fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond
a reasonable doubt."  In Blakely, the Supreme Court overturned a

sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the
maximum sentence a judge may impose after finding additional
facts, but the maximum he may impose without any additional
findings."  542 U.S. at 303-04 (internal quotations omitted.)[3]

     The rules announced in <u>Apprendi</u> and <u>Blakely</u>, however, are
not applicable retroactively to cases on collateral review.  <u>See</u>
<u>generally</u> <u>In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005) (finding
that the decision of the Supreme Court in <u>United States v.</u>
<u>Booker</u>, 543 U.S. 220 (2005), does not apply retroactively to
cases on collateral review); <u>United States v. Swinton</u>, 333 F.3d
481 (3d Cir.), <u>cert. denied</u>, 540 U.S. 977 (2003) (holding that
<u>Apprendi v. New Jersey</u>, 503 U.S. 466 (2000), does not apply
retroactively to cases on collateral review); <u>In re Turner</u>, 267
F.3d 225 (3d Cir. 2001) (holding that <u>Apprendi</u> does not apply
retroactively to cases on collateral review).  <u>See also</u> <u>United</u>
<u>States v. Price</u>, 400 F.3d 844, 849 (10th Cir.), <u>cert. denied</u>, 126
S.Ct. 731 (2005) (<u>Blakely</u> does not apply retroactively to cases
on collateral review).

     In any event, it does not appear that the trial court
violated the rule of <u>Apprendi</u>/<u>Blakely</u>.  The Supreme Court of New

---

[3] Most recently, in <u>United States v. Booker</u>, 543 U.S. 220
(2005), the Supreme Court applied the rule of <u>Appendi</u> to the U.S.
Sentencing Guidelines, holding that the Guidelines are not
mandatory, but are merely advisory.

Jersey has held that the rule of <u>Apprendi</u>/<u>Blakely</u> is not violated by imposition of a period of parole disqualification pursuant to N.J.S.A. 2C:43-6(b). <u>State v. Abdullah</u>, 184 N.J. 497, 499, 508-12 (2005). This accords with the holding of the Supreme Court that judicial factfinding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution. <u>See</u> <u>Booker</u>, 543 U.S. at 233; <u>Blakely</u>, 542 U.S. at 308-09. <u>See also</u> <u>Harris v. United States</u>, 536 U.S. 545, 56y8 (2002) (<u>Apprendi</u> does not preclude a judge from finding facts that increase a defendant's mandatory minimum sentence as long as those findings do not extend the sentence beyond the maximum authorized by the jury's verdict); <u>United States v. Williams</u>, 464 F.3d 443, 449 (3d Cir. 2006) (<u>Harris</u> remains binding law after <u>Booker</u>). Thus, the trial court did not sentence Petitioner beyond the statutory maximum in violation of <u>Apprendi</u> and <u>Blakely</u>. Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

15

with the district court's resolution of his constitutional claims
or that jurists could conclude the issues presented are adequate
to deserve encouragement to proceed further." Miller-El v.
Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of
the denial of a constitutional right.  Accordingly, no
certificate of appealability shall issue.

### V.   CONCLUSION

For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.


Peter G. Sheridan
United States District Judge

Dated:  2/9/07

16